IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATRINA HAUGHT, | No. 2:11-CV-1653-JAM-CMK |
| Plaintiff, | |
| vs. | ORDER |
| CITY OF ANDERSON, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this civil action. Pending before the court is plaintiff's motion to compel (Doc. 77). In her motion, plaintiff seeks: (1) an order compelling non-party witness Goodwin to provide answers to deposition questions; (2) an order compelling defendants' witnesses Miller and Blunk; and (3) an order compelling further responses to plaintiff's requests for production of documents, set 5, propounded to defendants. The motion is supported as to the dispute concerning Goodwin by a joint statement (Doc. 80)submitted by counsel for plaintiff and Goodwin. The remainder of plaintiff's motion is not supported by a joint statement but by plaintiff's separate affidavit (Doc. 81). The parties appeared at a hearing on September 18, 2015, at 10:00 a.m. before the undersigned in Redding, California. John Dugan Barr, Esq., and Cathleen Theresa Barr, Esq., appeared for plaintiff.

Bruce Alan Kilday, Esq., appeared for defendants. Andrew T. Caulfield, Esq., and Hayes H. Gable, Esq., appeared for non-party witness Goodwin. Following arguments by the parties, the matter was submitted.

## I.  BACKGROUND

### A.   Plaintiff's Allegations

Plaintiff alleges that, on May 29, 2010, she was arrested by City of Anderson police officer Goodwin. After the arrest, Goodwin "delivered custody of plaintiff" to fellow officer Bryan Benson, who is not a defendant to this action. Plaintiff claims that the purpose of the transfer was to allow Benson to transport plaintiff "unobserved and unchaperoned." Plaintiff claims that Benson deviated significantly from the route to the jail, drove to a remote location, stopped the car, kept plaintiff in the car, and attempted to persuade plaintiff to perform various sex acts on him. When plaintiff refused, Benson drove to a concealed location and raped plaintiff. Plaintiff alleges that, as a consequence, she "sustained severe physical and emotional injuries. . . ." In additional to civil rights claims against individuals and the City of Anderson, plaintiff asserts state law claims based on "assault, battery, rape, and kidnapping."

### B.   Procedural History

The current action proceeds against the City of Anderson, the City of Anderson Police Department, and Dale Webb in his official capacity as the Chief of Police for the City of Anderson Police Department. Goodwin, who had originally been named in the complaint, was dismissed on November 11, 2013, on stipulation of the parties (see Doc. 13). Pursuant to the District Judge's August 20, 2015, amended scheduling order, discovery closes on November 20, 2016, and dispositive motions are due by December 29, 2015.

///

///

///

## III.  DISCUSSION

Plaintiff seeks orders compelling additional discovery as follows: (1) answers to questions posed at Goodwin's deposition; (2) answers to questions posed at Miller's deposition; (3) answers to questions posed at Blunk's deposition; and (4) defendants' further responses to requests for production of documents.

### A.  Goodwin Deposition

Goodwin was initially deposed on June 17, 2015.  At issue are the questions and answers set forth in Exhibit 1 to the joint statement.  Plaintiff challenges Goodwin's assertion of his Fifth Amendment privilege against self-incrimination as a basis to refuse to answer 24 specific questions.  Additionally, plaintiff challenges Goodwin's refusal to answer two other questions citing vagueness.

#### 1.  Fifth Amendment Privilege

As set forth in the joint statement, the disputed questions and Goodwin's assertions of his privilege under the Fifth Amendment against self-incrimination as to each are as follows:

- Question: And how did it happen that Officer Benson transported the prisoner to Anderson Police Department?

    Goodwin's Assertion: Answering this question exposes Goodwin to possible aider-and-abettor liability.

- Question: As watch commander were you in a position to determine who was going to transport a prisoner?

    Goodwin's Assertion: To the extent Goodwin had knowledge of what Benson intended to do, this could expose Goodwin to liability for Benson's conduct.

- Question: So far as your understanding of the operation of the Anderson Police Department is concerned, is whoever is the watch commander in the position to determine who transports a prisoner?

    Goodwin's Assertion: Same as above.

///

///

- Question: Did you that night tell Officer Benson or remind Officer Benson that he had "a green light?"

    Goodwin's Assertion: To the extent Goodwin had knowledge of what Benson intended to do, this could expose Goodwin to liability for Benson's conduct.

- Question: During the time you were with the Anderson Police Department did you ever have consensual sex with someone who was under arrest?

    Goodwin's Assertion: This clearly calls for an incriminatory answer in that a person under arrest cannot, as a matter of law, consent to a sexual act.

- Question: Did you ever talk to Officer Benson about having sex with people who are under arrest?

    Goodwin's Assertion: If Goodwin had those discussions, they could form the basis for a conspiracy charge against Goodwin.

- Question: Did you ever talk to Officer Benson about having sex with people who had been detained for questioning but were not yet under arrest?

    Goodwin's Assertion: Same as above.

- Question: Did Officer Benson ever tell you that he had engaged in a sexual relationship with the plaintiff on the night in question?

    Goodwin's Assertion: Goodwin could be prosecuted for failing in his duty to disclose such information to the chief of police.

- Question: Did you ever tell anybody else that Officer Benson had told you that he'd engaged in sex with the plaintiff on that night?

    Goodwin's Assertion: Same as above.

- Question: Did you ever have sex with a woman that you'd met on a domestic violence call?

    Goodwin's Assertion: This question calls for a possibly incriminatory answer if such encounter was non-consensual.

- Question: Did you ever have consensual sex with a woman that you met on a domestic violence call?

    Goodwin's Assertion: This could be a crime if the woman was under arrest because, though the woman may have given consent, such consent would be invalid as a matter of law.

///

///

4

1  • Question: Prior to the incident that happened on May 29th, 2010, are you aware of any complaints that were ever made against you?

Goodwin's Assertion: This question calls for an answer that would provide a link in the chain of evidence leading to possible prosecution of Goodwin based on any such complaints against him.

• Question: Are you aware of any ongoing investigation of any complaint lodged against you with the City of Anderson Police Department prior to May 29th, 2010?

Goodwin's Assertion: Same as above.

• Question: Do you know the names of any witnesses who have been interviewed by any investigative agency as a consequence of complaints made against you prior to May 29th, 2010, in connection with your employment by the City of Anderson?

Goodwin's Assertion: Same as above.

• Question: Has any officer of either the Anderson Police Department or indeed any law enforcement agency contacted you about any complaint made against you prior to May 29th, 2010?

Goodwin's Assertion: Same as above.

• Question: Without going into for the moment the nature of any claims that have been made, are you aware of any investigation conducted at the present time with respect to your activities while an officer with the Anderson Police Department?

Goodwin's Assertion: Same as above.

• Question: Are you aware of at any time that Sergeant Miller engaged in sexual activity while on duty?

Goodwin's Assertion: This could expose Goodwin under an aider-and-abettor theory to the extent he had such knowledge.

• Question: Are you aware of at any time that Officer Nevins engaged in sexual activity while on duty?

Goodwin's Assertion: Same as above.

• Question: Are you aware of at any time that Sergeant Blunk engaged in sexual activity while on duty?

Goodwin's Assertion: Same as above.

///

///

- Question: Did Bryan Benson ever tell you that he had obtained consent from Ashley Hardon to engage in oral sex with other women?

  Goodwin's Assertion: This could expose Goodwin under an aider-and-abettor theory to the extent Benson ever told him this and given Benson's testimony that he gave Goodwin a "green light."

- Question: Did you ever discuss with Ashley Hardon whether or not she'd ever given Bryan Benson permission to have oral sex with another woman?

  Goodwin's Assertion: Same as above.

- Question: And did you engage in any sort of sexual activity with Shannon Balke during ride-alongs?

  Goodwin's Assertion: This is clearly incriminating to the extent "any sort" includes non-consensual sexual activity, which would be a crime.

- Question: Prior to the incident with Officer Benson that we're talking about, had you engaged in any kind of sexual activity with Shannon Balke?

  Goodwin's Assertion: Same as above.

- Question: Did you ever tell any investigative or police agency that Officer Benson had told you he'd had sex with the plaintiff on the evening in question?

  Goodwin's Assertion: This question call for an incriminating answer should it tend to demonstrate that Goodwin originally withheld such information from the Anderson Police Department and made false statements about the Haught incident.

Plaintiff argues that Goodwin does not have cause to invoke the privilege against self-incrimination and, therefore, that he must answer these questions. Specifically, citing United States v. Drollinger, 80 F.3d 389 (9th Cir. 1996), plaintiff contends that Goodwin cannot meet his burden of showing that he has "reasonable cause to apprehend [such] danger from a direct answer to the question posed to him." Id. at 392 (citing United States v. Neff, 615 F.2d 1235, 1239 (9th Cir. 1980)). According to plaintiff, the witness must show that the testimony would: (1) support a conviction under a criminal statute; or (2) furnish a link in the chain of evidence needed to prosecute the witness for a crime. See United States v. Brown, 918 F.2d 82, 84 (9th Cir. 1990). In this case, plaintiff concludes that Goodwin cannot show cause because the statutes of limitations on all possible federal criminal violations expired on May 29, 2015, and there are

no pending state criminal investigations against Goodwin.  Goodwin argues that he has cause to assert the Fifth Amendment privilege because he faces the possibility of criminal prosecution for crimes listed in California Penal Code § 290(c) (California's Sex Offender Registration Act) until May 29, 2020.  See Cal. Pen. Code § 801.1(b) (imposing a 10-year limitations period on prosecution of the offenses listed in § 290(c)).

In Hoffman v. United States, the Supreme Court ruled that the privilege against self-incrimination should be sustained when it is evident from the implications and context of a question that an answer to the question, or explanation as to why the question cannot be answered, might be dangerous because injurious disclosure could result.  See 341 U.S. 479, 486 (1951).  If the court concludes that no threat of self-incrimination is evident, the burden shifts to the party asserting the privilege to show a danger of incrimination.  See Neff, 615 F.2d at 1240.  In order to determine that the privilege does not apply, the reviewing judge must be perfectly clear that answering the question could not possibly result in self-incrimination.  See Mallow v. Hogan, 378 U.S. 1, 11-12 (1964).  In other words, the claim of privilege is good unless the court can conclude that any prospective answer could not possibly be incriminating, either directly or by forming a link in the chain.  See Shendal v. United States, 312 F.2d 564, 566 (9th Cir. 1963).

According to plaintiff, Goodwin has the burden as the party asserting the privilege to show that the hazard of self-incrimination is substantial, real, and appreciable and not imaginary.  While the court in Drollinger did indeed use that language, the court did so in the context of explaining that the privilege must be asserted on a question-by-question basis, as opposed to asserting the privilege in a vacuum without a specific question being posed.  See 80 F.3d at 392.  The court held that whether "substantial hazards of self-incrimination that are real and appreciable, not merely imaginary and unsubstantial" exist is assessed by examining specific questions, their setting, and answers to them.  Id. (quoting United States v. Rendahl, 756 F.2d 553, 555 (9th Cir. 1984)).  The language used in Drollinger and cited by plaintiff speaks to the procedural question of how the Fifth Amendment privilege must be asserted.

The court in Rendahl – also cited by plaintiff – used the "real and appreciable" language and determined that the privilege had been properly invoked, reversing the district court on the issue. See 756 F.2d at 555-56. In that case, testimony was solicited by an Internal Revenue Service agent at an enforcement hearing and was refused based on the Fifth Amendment privilege against self-incrimination. See id. at 554-55. Relying on Hoffman and Neff, the court determined that the hazard of self-incrimination was substantial and, therefore, properly invoked. See id. at 555-56. Notably, the court stated: "The fact that respondents were not the subject of any criminal investigation is not significant." Id. at 556.

Given these standards, the court finds that Goodwin has shown sufficient cause to assert the Fifth Amendment privilege as to each question above based on the possibility of criminal prosecution. As Goodwin notes, and consistent with Rendahl, whether plaintiff is aware of any current state criminal investigations against Goodwin is irrelevant given that he may be prosecuted under any number of state criminal statutes until the statute of limitations expires on May 29, 2020. Plaintiff's repeated argument that a prosecution under an aiding-and-abetting theory is "unlikely" is unpersuasive given that the standard requires only the possibility of incrimination, not the likelihood of incrimination. On the current record, cannot be "perfectly clear" that answering the disputed questions "could not possibly" be incriminating.

        2.    Vagueness

Goodwin also refused to answer two other questions, citing vagueness:

- Question: Did you on that night have an understanding as to the power of the watch commander?

   Goodwin's Assertion: Vague as to "the power of the watch commander."

- Question: During your time as an officer with the Anderson Police Department did you ever solicit someone who'd been arrested for a sexual act?

   Goodwin's Assertion: Vague as to whether the phrase "for a sexual act" modifies "solicit" or "arrested." Also vague as to whether "someone who'd been arrested" is a suspect arrested by Goodwin or some other officer.

The court finds that Goodwin's objections are well-taken.

B.     **Miller Deposition**

Miller first objects to answering questions regarding his girlfriend.  The disputed questions and Goodwin's assertions as to each are as follows:

- Question:  Who's that [referring to a person Miller kissed while on duty]?

    Response: Witness refused to answer unless instructed by a judge, citing relevance.

- Question: So, again, what's your girlfriend's name?

    Response: Same as above.

Miller's objections are well-taken.  The identity of Miller's girlfriend is not relevant to any claim in this action, nor is it reasonably calculated to lead to the discovery of admissible evidence. Miller will not be required to answer these questions.

Next, Miller refused to answer a question regarding citizen complaints made against him prior to the incident which is the subject of this lawsuit:

- Question: Do you have any documents relating to citizen complaints made against you prior to May of 2010:

    Response: Witness refused to answer, stating that counsel required a court order to obtain police officer personnel records.

Miller's objection is apparently based on his refusal to provide the substance of personnel records without a court order that he do so.  The question, however, does not seek the substance of records, only whether Miller has certain documents in his possession or control.  Miller's objection is overruled and he will be required to answer, yes or no, whether he has documents relating to citizen complaints made against him prior to May 2010.

Miller next objects to a question regarding citizen complaints made against him after the incident in May 2010:

- Question: You have had citizen complaints lodged against you since May of 2010, correct?

    Answer: I don't really remember all the dates but yeah.

9

1  Question: How many different people?

2  Response: Counsel instructed witness to only give number of people who had filed complaints involving rape or sexual misconduct or dishonesty.

3  Answer: Not with that said then.

Miller provided two answers – one, that he has had complaints filed against him since May 2010 and, two, that none of them involved rape, sexual misconduct, or dishonesty. The dispute is whether the witness should be required to identify the number of complaints <u>not</u> involving rape, sexual misconduct, or dishonesty. The court finds that he should. Given plaintiff's failure-to-train claim, plaintiff is entitled to discovery concerning any complaints of misconduct against the training officers, not just those limited to the type of misconduct alleged in this case.

Next, Miller refused to answer the following question:

- Question: Is it correct that since you were not there Officer Goodwin as the most experienced officer would have been the watch commander that night?

  Response: Defendants' counsel instructed the witness not to answer, stating: "This is outside the scope for production of this witness today."

Miller's objection is well-taken. Under Federal Rule of Civil Procedure 30(a)(2)(A)(ii), leave of court is required to depose a witness a second time. In this case, the questions and responses at issue relate to Miller's second deposition. Leave of court was not sought or obtained to take this deposition, which therefore proceeded on agreement of defendants' counsel made in a February 9, 2015, joint statement. In that statement, defendants' counsel stated: "Defendants. . . do not oppose Plaintiff taking a second deposition of Sgt. Miller on the condition that this second deposition is limited to questions pertaining to Benson's deposition testimony concerning Sgt. Miller allegedly engaging in sexual activities while on duty. . . ." Because this question is outside the scope of the agreement for a second deposition, Miller need not answer the question (which could have been asked at Miller's first deposition).

/ / /

/ / /

Plaintiff's counsel put on the record at the deposition his general frustration with seemingly being unable to ask about Miller's sexual relationships because "[w]e don't know who he was with."  The court observes, however, that the identity of who Miller may have had sexual relationships with while on duty, if true, is irrelevant.  What is relevant in this regard is whether Miller had sexual relationships while on duty, not with whom such relationships occurred.

### C. Blunk Deposition

Blunk first objected to a question about his wife's cell phone number:

- Question: Do you know what your wife's cell phone number was at the time during that period of time?

    Response: Objection, lacks foundation and violates her right to privacy.

This objection os not well-taken.  Whether or not Blunk knew what his wife's cell phone number was at the time or not does not infringe on anyone's privacy rights because the question does not ask for the number.   Blunk will be required to answer yes or no to this question.

Next, Blunk objected to a series of questions regarding his knowledge of citizen complaints:

- Question: Prior to May of 2010 had there ever been to your knowledge citizen complaints made against you?

    Response: Objection, overbroad and harassing against the City of Anderson, calls for information outside the scope of the allegations of the complaint.  Witness instructed not to answer except "for any claims that were filed against you that you were aware of for any rape or sexual misconduct or for dishonesty."

- Question: Any claims against you for misconduct, a claim of misconduct of any kind?

    Response: Same as above.

- Question: Are you aware of citizens' complaints against Sergeant Miller?

    Response: Same as above.

- Question: Anybody ever filled one [citizen complaint] out and handed one in with respect to you?

    Response: Same as above.

These objections are not well-taken.  First, the court agrees with plaintiff that, given her failure-to-train claim, she is entitled to discovery concerning any instances of misconduct reflected in citizen complaints against the training officers, not just those similar to the misconduct alleged in this case.  Second, none of these questions seek the contents or number of any complaints, merely whether Blunk has knowledge of such complaints.  Blunk will be required to answer yes or no to these questions.

          D.      **Requests for Production**

Based on plaintiff's separate statement, as well as representations of counsel at the hearing, it appears that many, if not all, of the disputes related to plaintiff's requests for production, set 5, could have been resolved by way of a protective order.  Further, given the lack of a joint statement, the court's evaluation of the disputed issues is made much more difficult.  Therefore, the court will defer ruling on issues related to plaintiff's requests for production, set 5, until such time as the parties submit to the court: (1) a proposed stipulated protective order; and (2) a joint statement regarding the discovery dispute, identifying only those issues which remain in dispute in light of the proposed protective order.

### IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion to compel (Doc. 77) is granted in part, denied in part, and deferred in part as discussed above; and

2.      The parties shall submit a proposed stipulated protective order governing the material which is the subject of plaintiff's requests for production, set 5, along with a joint statement regarding discovery dispute, by September 30, 2015.

DATED: September 22, 2015

                                                                                         
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE